IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0827

_____

FILED

**June 11, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA, EX REL. LINDA YORK,
Petitioner

v.

WEST VIRGINIA REAL ESTATE APPRAISER
LICENSING AND CERTIFICATION BOARD,
Respondent

_____

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

_____

Submitted: January 22, 2014
Filed: June 11, 2014

Carte P. Goodwin, Esq.                          Patrick Morrisey, Esq., Attorney General
Johnny M. Knisely II, Esq,                      Kelli D. Talbott, Deputy Attorney General
Goodwin & Goodwin, LLP                          Darlene Ratliff Washington, Esq., Senior
Charleston, West Virginia                       Assistant Attorney General
Counsel for the Petitioner                      Charleston, West Virginia
                                                Counsel for Respondent

JUSTICE BENJAMIN delivered the Opinion of the Court.

JUSTICE KETCHUM concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1.      "A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers."  Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

2.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight."  Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

3.      "Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue."  Syl. pt. 2, *Woodall v. Laurita*, 156 W. Va. 707, 195 S.E.2d 717 (1973).

4.      In adjudicating a contested case concerning the revocation or suspension of a licensed real estate appraiser's license to perform appraiser duties, the West Virginia Real Estate Appraiser Licensing and Certification Board must follow the procedural requirements set forth in Chapter 30 of the West Virginia Code, as well as the contested case hearing procedure set forth in Title 190, Series 4, of the *West Virginia Code of State Rules*.

Justice Benjamin:

This original proceeding in prohibition is before this Court upon the petition of Linda York, a licensed real estate appraiser, who asks this Court to direct the West Virginia Real Estate Appraiser Licensing and Certification Board ("the Board") to dismiss with prejudice the pending disciplinary complaints filed against her. Some of these complaints have their origins in actions taken by the petitioner as far back as 2001. The petitioner steadfastly denies that she engaged in improper, wrongful or deficient conduct in her work as an appraiser. The petitioner also asks for an award of attorney fees. Upon review of the petition, the limited response of the Board,[1] the arguments of

---

[1] The Board's initial response to the Petitioner's Petition was filed on September 11, 2013, and consisted simply of a motion to dismiss for failure to give notice of the claim, pursuant to W. Va. Code 55-17-1, *et seq.* (2002). The petitioner requested a ruling on this motion from this Court and that it be given an extension of time to file a response in opposition to the Board's motion. This Court deferred ruling on the motion, and issued a Rule to Show Cause directing the respondent to show cause why the Writ should not be granted.

We observe that the respondent Board never replied in a substantive manner to the petitioner's Petition for Writ of Prohibition, despite the clear requirements of our rules of appellate procedure. W. Va. R.App.P. 10(j) states

> The failure to file a brief in accordance with this rule may result in the Supreme Court refusing to consider the case, denying oral argument to the derelict party, dismissing the case from the docket, or imposing such other sanctions as this Court may deem appropriate.

(continued . . .)

1

the parties and the applicable law, this Court is of the opinion that the Board exceeded its jurisdiction by failing to conduct an administrative hearing on the complaints. The Board's failure to do so was in clear violation of State statutory and rule provisions. As such, we grant the writ as requested, and furthermore direct that the Board pay the petitioner's reasonable attorney fees and costs.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Linda York, is a licensed real estate appraiser. The practice of real estate appraisal is regulated by the respondent, West Virginia Real Estate Appraiser Licensing and Certification Board, pursuant to W. Va. Code § 30-38-1, *et seq.* (2001). The Board consists of nine members, four of whom must be certified real estate appraisers with at least five years' experience in appraisal as a principal line of work.[2] The Board itself is subject to oversight by the Federal Financial Institutions Examination Council ("Federal Council") pursuant to 12 U.S.C. § 3331, *et seq.*

---

In view of this Rule, the Board's oral argument was limited by this Court to an explanation of why it did not file a responsive brief. Oral argument on the substantive merits of petitioner's case was not permitted pursuant to this Rule.

[2] Since 2006, the petitioner has served as a member of the Board in this capacity.

In 2001, the petitioner was appointed to review a 1999 appraisal performed by another licensed appraiser, Barbara McCracken. The petitioner's review of Ms. McCracken's appraisal was the basis of a complaint before the Board filed against Ms. McCracken. The Board subsequently appointed two other independent appraisers to perform a retrospective appraisal on the same property. The complaint was heard by a hearing examiner, who recommended that Ms. McCracken's appraisal license be suspended. The Board agreed, and suspended Ms. McCracken's license for one year. She subsequently appealed the Board's decision to the Kanawha County Circuit Court, which reversed the Board's decision and reinstated her license in 2005.

In 2008, Ms. McCracken filed complaints with the Board against the petitioner, as well as the two other appraisers who reviewed her work in 2001. This complaint was numbered 08-015. On May 22, 2008, the Board dismissed these complaints, acknowledging that appraisers generally kept records of their work for five years and that there was no way to investigate the complaint.[3] Soon thereafter, on July 10, 2008, the Board received an anonymous complaint against the petitioner regarding an

---

[3] The Board relied upon the Uniform Standards of Professional Appraisal Practice ("USPAP") rule that requires maintenance of records for five years. The USPAP is the work of The Appraisal Foundation, which was established in 1987. The purpose of The Appraisal Foundation, as contained in its mission statement, is "promoting professionalism and ensuring public trust in the valuation process. . . through the promulgation of standards, appraiser qualifications and guidance regarding valuation methods and techniques."

appraisal she had performed in October of 2003. This complaint, numbered 08-024, was dismissed by the Board on December 11, 2008, after the Board determined that there was no probable cause to believe that a disciplinary violation had occurred.

On June 10, 2011, the Federal Council undertook a compliance review of the Board's activities. In its review, the Federal Council expressed concerns with the Board's time limitations for reviewing complaints, as well as the procedures in place for reviewing complaints that involved members of the Board. In February 11, 2012, in an attempt to satisfy the concerns of the Federal Council, the Board agreed that all complaints over five years old would be investigated instead of summarily dismissed.[4]

Shortly after this 2012 review of the Federal Council's report of the review, the Board purported to reopen the two 2008 complaints regarding these 2001 and 2003 appraisals filed against the petitioner. The Board undertook to have an independent appraiser review both of the old appraisals, and based upon that review, sought to discipline the petitioner. The Board offered to enter into a consent decree with the petitioner. The petitioner rebuffed this effort and challenged the Board's ability to reopen

---

[4] There does not appear to be any policy in place by rule or regulation that regulates the time limitations for complaints. The minutes of the May 22, 2008, Board meeting reflect that the previous practice of dismissing complaints that were filed greater than five years after the appraisal was merely a practice, not a formal policy.

4

the 2008 complaints in any fashion. To date, no formal action has been taken on either complaint.

Despite the lack of activity on the 2008 complaints, the Board in 2012 presented the petitioner with another proposed consent decree, which would have resolved the 2008 complaints as well as a new complaint, numbered 11-017, that the Board had received against the petitioner. Once again, the petitioner refused to enter into this consent decree. In correspondence between the Board's attorney and the petitioner's attorney, the Board represented that the complaints would be set for a hearing. The petitioner and her counsel agreed to the hearing and a proposed hearing was agreed to be scheduled, contingent upon a formal complaint being filed against the petitioner. To date, this formal complaint has never been filed, no hearing has ever been set and these matters remain unresolved.

On July 12, 2012, the Board informed the petitioner that yet another compliant had been received against her, numbered 12-015. On September 13, 2012, without holding a hearing, the Board voted to initiate disciplinary proceedings against the petitioner. Once again, the petitioner objected to the lack of a hearing and requested minutes of the Board's meeting in which the Board voted to discipline the petitioner. She argued that the Board was without authority to discipline an appraiser without a hearing.

Despite repeated correspondence between petitioner's counsel and the Board's attorney, no further action has been taken on that complaint.

In October of 2012, the petitioner was again informed that another complaint had been filed against her. The complaint was numbered 12-023. The petitioner, through her counsel, sought to resolve these matters and initiated discussions with the Board's attorney toward resolving these complaints.[5] These discussions did not lead to an agreement. No hearing was set.

The petitioner filed this Petition for Writ of Prohibition on August 14, 2013, seeking to stop any disciplinary proceedings against her on the part of the Board.

## II.

## STANDARD OF REVIEW

This Court has explained the standard for issuance of a writ of prohibition as follows:

---

[5] During the pendency of these complaints, the Board was represented by at least five separate assistant attorneys general. On June 12, 2013, the Federal Council's compliance review report noted that the Board did not receive consistent legal resources because of this turnover, which contributed to delays in resolving complaints. The report also noted that at the time of the review, there were thirty-four pending complaints, fifteen of which had been pending for over a year.

A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers.

Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 160 W. Va. 314, 233 S.E.2d 425 (1977).

Further,

In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996). Further,

we have held,

Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.

7

Syl. pt. 2, *Woodall v. Laurita*, 156 W. Va. 707, 195 S.E.2d 717 (1973).

## III.

## ANALYSIS

### A. Writ of prohibition

The petitioner argues that she is entitled to a writ of prohibition because the Board lacked the authority to reopen the previously dismissed 2008 complaints, and that notwithstanding that lack of authority and further, in regard to the remaining complaints, the Board grossly abused and exceeded its legitimate powers.

We first address the contention that the Board was without authority to reopen or reinstate the 2008 complaints that were duly dismissed. The Board was established by W. Va. Code § 30-38-1, *et seq.*, to regulate the practice of real estate appraisal. W. Va. Code § 30-38-7 (2001) states that among its duties, the Board is empowered to censure, suspend or revoke appraiser licenses, and to hold hearings, meetings and examinations.

In furtherance of its statutory mandate, the Board promulgated a series of "Investigative and Hearing Procedures" through procedural rules, as contained in Title 190 of the W. Va. Code of State Rules, *i.e.*, W. Va. Code R. § 190-4-1 (2012), *et seq.*

While the rules provide for an informal procedure for the resolution of disciplinary complaints, W. Va. Code R. § 190-4-6 states that any contested case shall have a hearing "conducted in accordance with W. Va. Code § 29A-5-1 (W. Va. Administrative Procedures Act) and the board's rules." Specifically, the rules establish a procedure for the resolution of contested complaints, including the issuance of a notice of hearing by the Board; the issuance of a statement of charges by the Board, which sets forth the acts or omissions with which the appraiser is charged, including the standards of professional practice and professional conduct rules or other Board rules violated; as well as the right of the appraiser to file an answer to the charges. Pre-hearing discovery and other procedures are also contemplated. W. Va. Code § 29A-5-1 (1964). Absent from the Investigative and Hearing Procedures is a timeframe in which complaints should be resolved.

Also absent in the regulations is the ability and jurisdiction of the Board to reopen previously adjudicated or resolved complaints. In regard to the complaints filed in 2008, the Board acted by dismissing them. We see no authorization for the so-called "reopening" of the previously dismissed complaints in the manner utilized by this Board. The Board's attempt to reopen the previously dismissed 2008 complaints is neither supported by the Board's procedural rules nor by statutory authority. The use of writ of prohibition is a remedy for a trial court or tribunal acting beyond its powers, as we stated in Syllabus point 2 of *Woodall v. Laurita*, 156 W. Va. 707, 195 S.E.2d 717 (1973):

> Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.

The Board's actions being clearly erroneous as a matter of law, we conclude that a writ of prohibition should issue against the Board.

As to the remaining complaints filed against the petitioner, the petitioner disputed the charges. Despite the clear direction and stated procedure allowing for a hearing and other procedures for contesting a complaint, the Board has failed to allow the petitioner to seek redress for these complaints. We observe that W. Va. Code § 30-1-5(c) (2005) contains a general time frame for all boards regulated by Chapter 30 of the Code, including the Board. This section states,

> Every board referred to in this chapter has a duty to investigate and resolve complaints which it receives and shall, within six months of the complaint being filed, send a status report to the party filing the complaint by certified mail with a signed return receipt and within one year of the status report's return receipt date issue a final ruling, unless the party filing the complaint and the board agree in writing to extend the time for the final ruling.

10

All of these complaints are outside of the one-year general time frame contained in W. Va. Code § 30-1-5(c).

In *State ex rel. Sheppe v. West Virginia Board of Dental Examiners*, 147 W. Va. 473, 128 S.E.2d 620 (1962), we addressed the failure of the Board of Dental Examiners to take a required action relating to a licensing test to become a licensed orthodontist within a reasonable time period.. We held in syllabus point 2 of *Sheppe* that

> [i]n the absence of a specific time limit, the failure of a state board or agency to take decisive action within a reasonable time, upon a matter properly before it, will be assumed to be a refusal of the action sought.

Recently, in *State ex rel. Fillinger v. Rhodes*, 230 W. Va. 560, 741 S.E.2d 118 (2013), we were presented with the case of a registered nurse against whom the West Virginia Board of Examiners for Registered Professional Nurses ("Nursing Board") had lodged disciplinary complaints. Although these complaints were filed in 2008 and 2009 no hearing was held on these complaints at the time this Court's original jurisdiction in mandamus was invoked. Similar to the factual scenario in the present case, the Nursing Board sent proposed consent decrees to the registered nurse against whom the complaints were lodged. Unlike the case at bar, hearings were scheduled to address the complaints, but these hearings were continued a number of times. We held in syllabus point 2 of *Fillinger*:

> In adjudicating a contested case concerning the revocation or suspension of a nurse's license to practice

11

> registered professional nursing, the West Virginia Board of Examiners must follow the procedural requirements set forth in Chapter 30 of the West Virginia Code, as well as the contested case hearing procedure set forth in Title 19, Series 5, of the *West Virginia Code of State Rules*.

In the present case, the petitioner argues that the Board is attempting to act in excess of its legitimate powers by not following procedure in a reasonable time to allow her to contest the allegations set forth in the more recent complaints. We agree.

Applying the five factors enumerated in *Hoover* to the more recent complaints, we find that the petitioner has no other adequate means, such as a direct appeal, to obtain the desired relief. At present the Board has failed to set any of the newer complaints for hearing. Therefore, there is no final order from which an appeal could be sought. The Board's resolution to date has been simply to seek entry of consent orders. These efforts have been consistently rebuffed by the petitioner. This conduct on the part of the Board is comparable to the conduct exhibited by the Nursing Board in *Fillinger*, wherein we stated that petitioner therein "has a right to fair treatment in disciplinary proceedings before a licensing board[.]" 230 W. Va. at 565, 741 S.E.2d at 123. As was the case in *Fillinger*, the delay in affording the petitioner a hearing has denied "the petitioner an opportunity to be heard in opposition to the allegations against her." *Fillinger* at 567, 741 S.E.2d at 125. The Board's actions are in excess of its jurisdiction, in that the complaints have not been handled in a timely fashion, as required W. Va. Code 30-1-5(c), the Board has failed to follow the mandates of its own procedural

rules in W.Va. Code R. § 190-4-1, *et seq*., and the requirements set forth in Chapter 30 of the W. Va. Code governing this Board. We find that a writ of prohibition is therefore appropriate under these circumstances. In so finding, we hold that in adjudicating a contested case concerning the revocation or suspension of a licensed real estate appraiser's license to perform appraiser duties, the West Virginia Real Estate Appraiser Licensing and Certification Board must follow the procedural requirements set forth in Chapter 30 of the West Virginia Code, as well as the contested case hearing procedure set forth in Title 190, Series 4, of the *West Virginia Code of State Rules*.

## B. Attorney fees

The petitioner has requested the payment of her attorney fees, costs and expenses by the Board, in light of its violation of her rights to defend against these misconduct complaints. The petitioner argues that the Board's conduct was excessively vexatious, and warrants the payment of these fees, costs and expenses. This Court has approved the award of attorney fees in cases involving delays in adjudicating a litigant's driving privileges within the State (*see, e.g. Miller v. Hare*, 227 W. Va. 337, 342, 708 S.E.2d 531, 536 (2011) ). This Court has also recognized that "[t]here is authority in equity to award to the prevailing litigant his or her reasonable attorney's fees as 'costs,' without express statutory authorization, when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" (*see Bd. of Review of Bureau of Emp't*

13

*Programs v. Gatson,* 210 W. Va. 753, 755, 559 S.E.2d 899, 901, *quoting* Syl. pt. 3 of

*Sally-Mike Properties v. Yokum*, 179 W. Va. 48, 365 S.E.2d 246. *Trozzi v. Bd. of Review*

*of W. Va. Bureau of Emp't Programs*, 214 W. Va. 604, 607, 591 S.E.2d 162, 165 (2002).

In the case before us, the petitioner was never afforded an opportunity to contest the allegations of misconduct levied against her by the very board on which she served as a member. From 2008, and continuing to date, the petitioner's professional reputation has been under a cloud of doubt and suspicion occasioned by these long-pending charges. The petitioner has never been afforded the basic opportunity afforded to her by the Administrative Procedures Act, or the Board's own rules and statutes to contest the Board's actions and to challenge the proposed discipline. Instead of setting this matter for a hearing, the Board instead continued to present proposed consent decrees and acted to pursue additional charges against the petitioner. This conduct rises to the level warranting an award of reasonable attorney fees and costs to the petitioner from the respondent Board for the time period between the reopening of the 2008 complaints to the conclusion of this proceeding.[6]

---

[6] *See, e.g.,* Syl. pt. 4, *Hollen v. Hathaway Electric, Inc.*, 213 W. Va. 667, 584 S.E.2d 523 (2003) (" 'Where attorney's fees are sought against a third party, the test of what should be considered a reasonable fee is determined not solely by the fee arrangement between the attorney and his client. The reasonableness of attorney's fees is generally based on broader factors such as: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the

(continued . . .)

14

## IV.

## CONCLUSION

For the foregoing reasons, we grant the requested writ of prohibition. The Board is hereby prohibited from taking any disciplinary action against the petitioner as it relates to the pending complaints, numbered 08-015, 08-023, 11-017, 12-015 and 12-023, and shall forthwith dismiss each complaint. The Board is also ordered to pay to the petitioner and her counsel reasonable attorney fees and costs associated with the award of this writ, consistent with the directions contained within this opinion.

Writ granted.

---

case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.' Syl. pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W. Va. 190, 342 S.E.2d 156 (1986).").